**2322-CC09642**

Electronically Filed - CITY OF ST. LOUIS - December 04, 2023 - 10:30 AM

**IN THE CIRCUIT COURT FOR THE CITY OF ST. LOUIS**
**STATE OF MISSOURI**

| | | |
|---|---|---|
| **KENNETH NOE,** | ) | |
| | ) | |
| **Plaintiff**, | ) | |
| | ) | |
| vs. | ) | Case No. |
| | ) | |
| **HARRIS-STOWE STATE UNIVERSITY,** | ) | Div. |
| | ) | |
| Serve at: | ) | **JURY TRIAL DEMANDED** |
| Dr. LaTonia Collins Smith | ) | |
| The Office of the President | ) | |
| Harris-Stowe State University | ) | |
| 3026 Laclede Avenue | ) | |
| St. Louis, Missouri 63102 | ) | |
| | ) | |
| **Defendant.** | ) | |

**VERIFIED PETITION[1]**

COMES NOW Plaintiff Kenneth Noe ("Plaintiff"), by and through undersigned

counsel, and for his Verified Petition (this "Petition"), states the following to the Court:[2]

**NATURE OF THE ACTION**

1. This Petition is predicated upon facts giving rise to claims, as set forth in more detail

   below, brought against Defendant Harris-Stowe State University ("Harris-Stowe")

   pursuant to:

---

[1] For ease of reading, the factual allegations contained within this Petition are separated into heading and sub-headings. However, the factual allegations from all preceding headings and sub-headings are hereby realleged and incorporated into all subsequent headings and sub-headings as if fully set forth herein. Additionally, all exhibits referenced in this Petition are hereby fully incorporated into the same as if fully stated herein.
[2] All factual allegations made in this Petition are, unless otherwise specified, alleged to have occurred "at all relevant times herein."

Electronically Filed - CITY OF ST. LOUIS - December 04, 2023 - 10:30 AM

a.  The Americans with Disabilities Act (the "ADA") for refusing to engage Plaintiff in a good-faith interactive process to determine what, if any, reasonable accommodations Plaintiff may need to permit him to continue performing the essential functions of his job at Harris-Stowe; disability discrimination; and retaliation for engaging in one or more activities protected by the ADA.

b.  The Missouri Human Rights Act (the "MHRA") for disability discrimination; creating a hostile work-environment related to Plaintiff's disability and related protected activities; and retaliation for engaging in one or more activities protected by the MHRA.

c.  Breaching the Collective Bargaining Agreement covering certain terms and conditions of Plaintiff's employment (Plaintiff's "CBA").

d.  RSMo. § 536.150 seeking a *de novo* judicial review of an uncontested administrative decision related to Defendant's dismissal notice issued to Plaintiff which violated Plaintiff's constitutional rights and rights under Plaintiff's CBA.

## PARTIES

### PLAINTIFF KENNETH NOE

2.  Plaintiff is, and was at all relevant times herein, a resident of the City of St. Louis, Missouri.

3.  In or around August of 2015, Plaintiff was hired by Harris-Stowe as a Tenure-Track Assistant Professor of Philosophy.

Electronically Filed - CITY OF ST. LOUIS - December 04, 2023 - 10:30 AM

4.    Plaintiff is disabled as that term is contemplated by both the ADA and MHRA in that, as discussed in more depth below, he has been medically diagnosed with several physical and mental impairments.

5.    At all relevant times herein, Plaintiff was a member of Harris-Stowe's National Education Association (the "Association").

6.    As discussed in more depth below, Plaintiff's employment at Harris-Stowe was terminated on or about September 9, 2022 (Plaintiff's "Termination").

**DEFENDANT HARRIS-STOWE STATE UNIVERSITY**

7.    Harris-Stowe is a historically black public university with its principal place of business located at 3026 Laclede Avenue, City of St. Louis, State of Missouri 63103.

8.    More specifically, Harris-Stowe belongs to the State of Missouri university system.

9.    Harris-Stowe is governed by a six-person Board of Regents (Harris-Stowe's "Board").[3]

10.   Dr. Latonia Collins Smith, Ed.D. ("Dr. Collins") is Harris-Stowe's President and reports to the university's Board.

11.   Harris-Stowe conducts continuous and systematic business in the State of Missouri.

12.   At all relevant times herein, Harris-Stowe had 15 or more employees on all relevant dates contained herein.

13.   Thus, Harris-Stowe is an "employer" as contemplated by both the ADA and MHRA.

---

[3] *See* RSMo. § 174.300.

Electronically Filed - CITY OF ST. LOUIS - December 04, 2023 - 10:30 AM

## JURISDICTION, VENUE, AND EXHAUSTION
## OF ADMINISTRATIVE REMEDIES

14.   Jurisdiction and venue are proper in the City of St. Louis, Missouri, pursuant to RSMo. §§ 213.111.1 and 508.010.

15.   On or about March 8, 2023, Plaintiff dually filed his Charge of Discrimination, 11-page Particulars, and eight (8) referenced/incorporated exhibits (collectively, Plaintiff's "Charge") with the Missouri Commission on Human Rights (the "MCHR") and the Equal Employment Opportunity Commission (the "EEOC").[4]

16.   On or about September 27, 2023, Plaintiff received one Notice of Right to Sue letter from the MCHR.[5]

17.   Additionally, on or about September 12, 2023, Plaintiff received one Notice of Right to Sue letter from the EEOC.[6]

18.   Thus, as to Plaintiff's claims as plead herein—brought pursuant to the MHRA and ADA—Plaintiff has filed this Complaint within 90 days of the issuance of both the EEOC and MCHR's Notices of Right to Sue as set forth above.

19.   Plaintiff's March 8, 2023, Charge provided both the MCHR and EEOC a sufficient opportunity to investigate the full scope of the controversy between the parties and, accordingly, the scope of this judicial complaint may be, and is, as broad as the scope of any MCHR or EEOC investigation that could reasonably be expected to have grown out of Plaintiff's Charge.

---

[4] *See generally* Plaintiff's Exhibit 3.
[5] *See* Plaintiff's Exhibit 1, p. 1.
[6] *See* Plaintiff's Exhibit 2, pp. 1-2.

Electronically Filed - CITY OF ST. LOUIS - December 04, 2023 - 10:30 AM

20. Thus, Plaintiff has satisfied all private, administrative, and judicial prerequisites to the institution of this cause of action, and this Petition is being filed within all applicable Missouri state and federal statutes of limitations.

21. Plaintiff's cause of action arises out of conduct that took place in the City of St. Louis, State of Missouri.

22. Moreover, this Court has jurisdiction over Plaintiff's Breach of Contract and Review of a Non-Contested Administrative Decision pursuant to RSMo. § 478.070 (Breach of Contract), RSMo. § 536.150 (Administrative Review), and Mo. Const., Art. V., § 18 (Administrative Review).

## FACTUAL ALLEGATIONS RELATED TO ALL COUNTS

23. As stated above, in or around August of 2015, Plaintiff was hired by Harris-Stowe as a Tenure-Track Assistant Professor of Philosophy.

24. As a result of the COVID-19 pandemic, for the four (4) semesters preceding Plaintiff's September 9, 2022, termination of employment, he (along with other Harris-Stowe professors) was teaching classes remotely.

## PLAINTIFF'S PHYSICAL AND MENTAL DISABILITIES

25. As discussed in more depth below, while employed at Harris-Stowe, Plaintiff was and/or had been diagnosed with the following physical and mental impairments (collectively, Plaintiff's "disabilities" or "mental impairments"):

   a. Type II Diabetes (physical impairment).

   b. Hyperglycemia (physical impairment).

   c. Major depressive disorder (mental impairment).

Electronically Filed - CITY OF ST. LOUIS - December 04, 2023 - 10:30 AM

    d.    Panic disorder (mental impairment).

    e.    Agoraphobia (mental impairment).[7]

26.    Each of the foregoing physical and mental impairments are "disabilities," as that term is defined (and contemplated) by both the ADA and MHRA because:

    a.    They, individually and collectively, substantially limit one (1) or more of Plaintiff's major life activities;

    b.    Plaintiff had a record of each of the above-listed physical and mental impairments; and/or

    c.    Harris-Stowe regarded Plaintiff as having one or more of the above-listed physical and/or mental impairments.

27.    None of Plaintiff's physical or mental impairments posed any threat of demonstrable serious harm to either himself or any other person.

28.    As set forth in more detail below, Harris-Stowe was made aware of each of Plaintiff's above-listed mental and physical disabilities on a number of separate occasions.

---

[7] "Agoraphobia" is listed in the Diagnostic and Statistical Manual of Mental Disorders (DSM-IV) as "[a]nxiety about being in places or situations from which escape might be difficult (or embarrassing) or in which help may not be available in the event of having an unexpected or situationally predisposed panic attack or panic-like symptoms. Agoraphobia fears typically involve characteristic clusters of situations that include being outside the home alone; being in a crowd or standing in a line; being on a bridge; and traveling in a bus, train, or automobile."

Electronically Filed - CITY OF ST. LOUIS - December 04, 2023 - 10:30 AM

## PLAINTIFF'S AUGUST 17-18, 2021,
## ADA ACCOMMODATION PAPERWORK

29.  On August 17-18, 2021, Plaintiff's primary care physician's nurse practitioner, Gina Eoloff, L.P.N. ("Nurse Practitioner Eoloff"), completed Harris-Stowe's required ADA accommodation request paperwork on Plaintiff's behalf (the "August 17-18, 2021, ADA Paperwork").[8]

30.  More specifically, Nurse Practitioner Eoloff stated that Plaintiff "**[s]hould work from home until further notice due to high risk of COVID infection**."[9]

31.  In addition to completing Harris-Stowe's ADA Paperwork, Nurse Practitioner Eoloff also provided the university with a type-written note on Mercy Clinic Internal Medicine-Chippewa ("Mercy Hospital") letterhead, which stated:

> [Plaintiff] has medical conditions that would put him at increased risk of Covid infection.  It is recommended that he performs his job duties remotely and work from home.  FMLA forms have been completed to show this accommodation request.  Please feel free to contact the office if there are any additional questions or problems.  Thank you for your time in this matter.[10]

32.  Nurse Practitioner Eoloff's fax confirmation confirms that she sent the completed August 17-18, 2021, ADA Paperwork to "[a]ttn Romney Edwards" on August 18, 2021.[11]

33.  In addition to Nurse Practitioner Eoloff completing the August 17-18, 2021, ADA Paperwork and providing a type-written note on Mercy Hospital letterhead, at

---

[8] *See generally* Plaintiff's Exhibit 7.
[9] *Id.* at pp. 6-8 (emphasis added).
[10] *Id.* at p. 9.
[11] *Id.* at p. 2.

Electronically Filed - CITY OF ST. LOUIS - December 04, 2023 - 10:30 AM

Harris-Stowe's request, Plaintiff also executed a HIPAA compliant medical release authorizing Harris-Stowe to access Plaintiff's medical records from Dr. Catherine Ash, M.D. ("Dr. Ash") for medical records "[a]pplicable to ADA Accommodations in the workplace," "[u]ntil the Provider fulfills [the] request [for medical records]."[12]

34.   On August 18, 2021, Plaintiff requested a reasonable accommodation for his above-described physical impairments.

35.   Specifically, Plaintiff requested that Harris-Stowe continue permitting Plaintiff to teach his classes remotely.

36.   Plaintiff properly submitted all requested ADA Accommodation paperwork, and Harris-Stowe approved Plaintiff's request for the reasonable accommodation of remote teaching.

37.   This request did not include any sort of end date.

38.   Plaintiff did not receive Harris-Stowe's response to his request until October 22, 2021.

39.   Moreover, Harris-Stowe had been offering online classes in Plaintiff's teaching discipline for years prior to the COVID-19 pandemic, and since the beginning of Plaintiff's employment with Harris-Stowe, he had been assigned at least three (3) Philosophy courses each semester to be taught online.

---

[12] Plaintiff's Exhibit 6, p. 5.

Electronically Filed - CITY OF ST. LOUIS - December 04, 2023 - 10:30 AM

40.  In Harris-Stowe's response, however, it did not claim that Plaintiff's August 17-18, 2021, request for the reasonable accommodation of remote teaching posed any sort of undue hardship on either the university or Plaintiff's students.

41.  Likewise, Harris-Stowe never claimed that, by teaching remotely, Plaintiff would be unable to fulfill the essential functions of his job as a university professor.

### PLAINTIFF'S NOVEMBER 10, 2021
### ADA ACCOMMODATION PAPERWORK

42.  On November 10, 2021, Nurse Practitioner Eoloff" completed/returned Harris-Stowe's required ADA accommodation request paperwork on Plaintiff's behalf (the "November 10, 2021, ADA Paperwork").[13]

43.  In Nurse Practitioner Eoloff's November 10, 2021, ADA Paperwork, she stated that Plaintiff was suffering from the physical impairments of Type II Diabetes and Hyperglycemia, and that these impairments substantially limited one or more of Plaintiff's major life activities—"Interacting with Others."[14]

44.  More specifically, Nurse Practitioner Eoloff noted that Plaintiff's physical impairments could interfere with his job performance because, "diabetes and hyperglycemia can cause disfunction to [Plaintiff's] immune system" making me a "… high risk for possible COVID."[15]

---

[13] *See generally* Plaintiff's Exhibit 5.
[14] *Id.* at p. 1.
[15] *Id.*

Electronically Filed - CITY OF ST. LOUIS - December 04, 2023 - 10:30 AM

45.    Nurse Practitioner Eoloff further indicated that, as a result of Plaintiff's physical impairments, he "[s]hould work from home until Spring 2022 due to high risk [of] COVID infection" due to Plaintiff's conditions.[16]

46.    As a result of Plaintiff's physical impairments as noted by Nurse Practitioner Eoloff in the November 10, 2021, ADA Paperwork, she specifically requested that Harris-Stowe provide Plaintiff with the reasonable accommodation of "working from home"—something that Plaintiff (and other Harris-Stowe) professors had successfully been doing since the onset of the COVID-19 pandemic.[17]

47.    In response to the ADA Paperwork's question of "[h]ow does the employee's limitation(s) interfere with his/her ability to perform the job function(s) or access a benefit of employment?," Nurse Practitioner Eoloff stated that Plaintiff "can perform his job duties but recommend[s] pt [patient] work from home remotely."[18]

48.    Likewise, in response to the ADA Paperwork's question, "[d]o you have any suggestions regarding possible accommodations to improve job performance?," Nurse Practitioner Eoloff checked the box for "Yes," and offered the suggestion of allowing me ". . . to work from home until Spring 2022."[19]

---

[16] Plaintiff's Exhibit 5, p. 2.
[17] *Id.*
[18] *Id.*
[19] *Id.*

Electronically Filed - CITY OF ST. LOUIS - December 04, 2023 - 10:30 AM

49.    In response to the question, "[h]ow would your suggestions improve the employee's job performance?," Nurse Practitioner Eoloff stated, "[j]ob can still be performed while decreasing risk factor for patient."[20]

50.    Finally, Nurse Practitioner Eoloff indicated that she faxed the above-described ADA Paperwork to Harris-Stowe employee "Romney Edwards" on November 10, 2021.[21]

51.    Like Plaintiff's August 18, 2021, request for the reasonable accommodation of teaching remotely, Harris-Stowe granted Plaintiff's request.

52.    Notably, Plaintiff did not receive a response from Harris-Stowe until January 24, 2022.

53.    Regardless, and also as was the case for Plaintiff's August 18, 2021, request, Harris-Stowe never made any mention that Plaintiff's request for a reasonable accommodation either posed any sort of undue hardship on the university or would affect Plaintiff's ability to perform the essential functions of his job as a university professor.

54.    Notably, during the summer of 2021, Harris-Stowe paid for an optional training course for the university's professors, including Plaintiff.

55.    Specifically, this training course—a series of seven (7) online professional development workshops called Quality Matters Certification for Online Course Design and Instruction—was focused on enhancing both the instructor's online teaching experience and the student's online learning.

---

[20] Plaintiff's Exhibit 5, p. 2.
[21] *Id.* at p. 4.

Electronically Filed - CITY OF ST. LOUIS - December 04, 2023 - 10:30 AM

## PLAINTIFF'S AUGUST 8, 2022
## ADA ACCOMMODATION PAPERWORK

56. Prior to completing any ADA accommodation paperwork, Plaintiff was advised that the university would be denying all COVID-19 related requests for accommodation, and thus, instructed Plaintiff to seek ADA accommodations for his mental health impairments.

57. Thus, on August 8, 2022, Nurse Practitioner Eoloff, completed/returned a third set of Harris-Stowe's required ADA accommodation request paperwork on Plaintiff's behalf (the "August 8, 2022, ADA Paperwork").[22]

58. In Nurse Practitioner Eoloff's August 8, 2022, ADA Paperwork, she restated her responses to the November 10, 2021, ADA Paperwork verbatim, with one exception.[23]

59. Namely, Nurse Practitioner Eoloff indicated that, as a result of the ongoing COVID-19 pandemic, and the continued high risks that the disease posed to Plaintiff's health as a result of his medical conditions, that Harris-Stowe extend Plaintiff's previously approved (and successfully implemented by Plaintiff) reasonable accommodation of working remotely "… through Spring 2023."[24]

---

[22] *See generally* Plaintiff's Exhibit 6.
[23] See generally *Id.*
[24] *Id.* at p. 2.

Electronically Filed - CITY OF ST. LOUIS - December 04, 2023 - 10:30 AM

**PLAINTIFF'S AUGUST 30, 2022**
**ADA ACCOMMODATION PAPERWORK**

60.    On August 30, 2022, Plaintiff's psychiatrist, Dr. Saif-Ur-Rahman Paracha, M.D. (Dr. Paracha"), completed/returned Harris-Stowe's required ADA accommodation request paperwork requested by Harris-Stowe for Plaintiff (the "August 30, 2022, ADA Paperwork")—specifically related to Plaintiff's diagnosed mental impairments which were specifically identified above as Major Depressive Disorder, Panic Disorder, and Agoraphobia (collectively, Plaintiff's "mental impairments").[25]

61.    In Dr. Paracha's August 30, 2022, ADA Paperwork, he specifically:

a.    Identified Plaintiff as having been diagnosed with each of the aforementioned mental impairments.[26]

b.    Indicated that the mental impairments substantially limited one or more of Plaintiff's major life activities "… as compared to most people in the general population," and more specifically affected the major life activities of sleeping, interacting with others, thinking, concentrating, working, and caring for self.[27]

c.    Stated that the anticipated duration of Plaintiff's mental impairments was "6-12 months."[28]

---

[25] *See generally* Plaintiff's Exhibit 8.
[26] *Id.* at p. 1.
[27] *Id.*
[28] *Id.* at p. 2.

Electronically Filed - CITY OF ST. LOUIS - December 04, 2023 - 10:30 AM

d.    Stated that Plaintiff's "[t]emporary with residual side effects" include that he "[c]an have ongoing anxiety with periodic flare ups."[29]

e.    As to whether Plaintiff's mental impairments were "Episodic/In Remission," Dr. Paracha stated that Plaintiff had "… ongoing anxiety and depression with periodic exacerbations."[30]

62.    Under Section B of the ADA Paperwork stating, "[q]uestions to help determine whether an accommodation is needed," Dr. Paracha answered each question as follows (Dr. Paracha's answers are in bold):[31]

a.    "What limitation(s) is interfering with job performance or accessing a benefit of employment?   **Anxiety and fear of leaving house, intense anxiety among crowds, recurrent panic attacks, anxiety related [to] driving and being around other people being unsafe or unhealthy; severe depression."[32]**

b.    "What job functions (description attached) or benefits of employment is the employee having trouble performing or accessing because of the limitation(s)?   **Being in a class or teaching class in-person due to fear of being around crowds of people and getting sick [due to COVID-19]."[33]**

---

[29] Plaintiff's Exhibit 8, p. 2.
[30] *Id.*
[31] *Id.*
[32] *Id.* (emphasis added to Dr. Paracha's answers).
[33] *Id.* (emphasis added to Dr. Paracha's answers).

Electronically Filed - CITY OF ST. LOUIS - December 04, 2023 - 10:30 AM

c.    "How does the employee's limitation(s) interfere with his/her ability to perform the job function(s) or access a benefit of employment? **Patient can have severe difficulty and has had to call off work due to being unable to drive comfortably, get to work and due to severe anxiety of being in a class with other people.**"[34]

63.    When asked if Dr. Paracha has "… any suggestions regarding possible accommodations to improve job performance," he checked the box for "Yes," and added, "[p]atient may be able to maintain his work on a virtual or remote basis."[35]

64.    Likewise, in response to the ADA Paperwork's question, "[h]ow would your suggestions improve the employee's job performance?," Dr. Paracha stated, "[b]eing in a safe/familiar environment at home."[36]

65.    Dr. Paracha dated the form on August 30, 2022.[37]

66.    Finally, Dr. Paracha provided Plaintiff with a "WORK/SCHOOL EXCUSE" dated August 30, 2022, that restricted his from working on "8/15/22 through 8/30/22" with a release to return to work at Harris-Stowe on August 31, 2022.[38]

67.    In contrast to Harris-Stowe's response to Plaintiff's previously approved requests for identical reasonable accommodations, on August 18, 2022, Plaintiff received a

---

[34] Plaintiff's Exhibit 8, p. 2 (emphasis added to Dr. Paracha's answers).
[35] *Id.*
[36] *Id.*
[37] *Id.* at p. 3.
[38] *Id.* at p. 4.

Electronically Filed - CITY OF ST. LOUIS - December 04, 2023 - 10:30 AM

letter from Monique C. McKinney ("McKinney") from Harris-Stowe's Office of Human Resources.[39]

68.   In McKinney's letter, she stated that she was "… writing with regards to your recent request for a continued remote-work accommodation."[40]

69.   To that end, McKinney continued with:

> As you were made aware in the communication from this office on January 24, 2022 responding to your penultimate ADA Accommodation request, "[a]fter careful review, we have determined that we will grant the accommodation of remote work through 5/14/2022.  **However, we are unable to continue to provide you with a reasonable accommodation of remote work after 5/14/22. This is due to the need of having Faculty on site to fulfil required student facing interactions and your past failure to participate in meetings and events (including virtual events) where your attendance is required [of] faculty** (emphasis added)."  This office in consultation with the administration now informs you that the requested accommodation submitted on August 8, 2022 to work remotely through Spring 2023 is denied.[41]

70.   Plaintiff would not that May 14, 2022 was the end of his then-current contract year at Harris-Stowe.

71.   Rather than continuing to accommodate Plaintiff's impairments, McKinney stated that Harris-Stowe, instead, proposed the following accommodations:

a.   "Permitting you to require masks of students in your class, as well as during meetings with administrators, faculty and students (for conferences, advising, or otherwise)."[42]

---

[39] *See generally* Plaintiff's Exhibit 9.
[40] *Id.* at p. 1.
[41] *Id.* (emphasis in original).
[42] *Id.*

Electronically Filed - CITY OF ST. LOUIS - December 04, 2023 - 10:30 AM

b.   "Permitting you to restrict the front row of your classroom."[43]

c.   "Limiting the classroom size to 12 to enable social distancing in the classroom"[44]

d.   "Permitting you to take an additional 15 minute break during class time if needed to address your health, so long as the amount of additional breaks are reported to your Dean so that a determination can be made as to whether the students need a supplemental assignment or tasks to make up class-time."[45]

72.   However, the above-listed, proposed accommodations failed to satisfy Plaintiff's physician-stated basis for requesting accommodations for Plaintiff's disabilities in the first place.

73.   McKinney concluded her August 18, 2022, letter denying Plaintiff's request for the ongoing reasonable accommodation of teaching remotely by stating:

> If the above accommodations are acceptable to you, please advise and we will take steps to implement them.  If you do not believe some or all of these suggested accommodations are necessary, please advise. If you have another articulable on-campus accommodation that may be more closely tailored to your concerns, please let us know so that we may discuss.[46]

74.   Of additional note, at the time Plaintiff received McKinney's aforementioned letter, he was aware that Harris-Stowe Provost, Dr. Edward Hill, had continued teaching his classes remotely.

---

[43] Plaintiff's Exhibit 9, p. 1.
[44] *Id.*
[45] *Id.*
[46] *Id.* at p. 2.

Electronically Filed - CITY OF ST. LOUIS - December 04, 2023 - 10:30 AM

75.    Thus, it was difficult for Plaintiff to believe that this reasonable accommodation posed any sort of undue hardship on Harris-Stowe (*vis-à-vis* Plaintiff's students).

**PLAINTIFF'S TERMINATION OF
EMPLOYMENT FROM HARRIS-STOWE**

76.    On September 9, 2022, McKinney sent Plaintiff another letter regarding his most recent request for a continuation of Plaintiff's previously approved, physician-directed reasonable accommodations.[47]

77.    In this letter, McKinney began by stating that:

> We are in receipt of the submission from Psych Care Consultants dated August 30, 2022, which was received by facsimile at 2:16 pm on that date.  This Psych Care Consultants submission follows your initial submission from Mercy Internal Medicine, which is dated August 8, 2022 and was received by facsimile at 11:50 am on that date.  The University has compared the differences in the reported impairment and limitations.[48]

78.    Continuing, McKinney stated:

> The University has communicated to you that in-person instruction and advising of students is an essential function of your job.  The University has also demonstrated, on numerous occasions, its intent and commitment to engaging with you to arrive at reasonable accommodations, that meet the needs of the University which are, among other things, to provide our students with in-person instruction and advising.[49]

79.    McKinney then proceeded to restate (verbatim) the accommodations proposed in her August 18, 2022, letter.[50]

---

[47] *See generally* Plaintiff's Exhibit 10.
[48] *Id.* at p. 2.
[49] *Id.*
[50] *Id.*

Electronically Filed - CITY OF ST. LOUIS - December 04, 2023 - 10:30 AM

80.     However, McKinney noted that Plaintiff's "… response to this opening attempt by the University to commence an interactive process was submitted that same day, August 18, 2022, and there you **rejected** each proposed accommodation and instead stated that because your doctor recommended remote work accommodations, that you will hold firm that the only accommodation you will accept is remote work."[51]

81.     With regard to Plaintiff's position on Harris-Stowe's unacceptable accommodations as proposed in McKinney's August 18, 2022, letter, she stated that, "[t]he University further communicated with you on August 19, 2022 when it was expressed that:"[52]

> The university has communicated that remote work poses an undue burden and therefore the requested accommodation [of remote work] was not approved…The University remains committed to engaging with you in this regard…Please confirm that you will not engage with the University in crafting reasonable accommodations that will permit you to work in person.[53]

> You did not respond to this communication.  You have not proposed any reasonable accommodations that would permit you to provide our students with the needed in-person instructions, or meet an essential function of your job which his [sic] to provide in-person instruction and student advising.  You have therefore refused to engage in an interactive process in any meaningful manner whatsoever.[54]

> The University notes that in addition to your unacceptable actions outlined in this office's August 28, 2022 communication concerning your unilateral cancellation of class and the issues created by these actions, in stark violation of the University's directives to you, you have since directly contacted students and instructed them to visit an on-line platform where you would essentially conduct the classes assigned to you online.  Several students have complained in-person about this to the University.  Some students have opted to remove

---

[51] Plaintiff's Exhibit 10, pp. 1-2 (emphasis in original).
[52] *Id.* at p. 2.
[53] *Id.* (brackets and ellipsis in original).
[54] *Id.* (emphasis in original).

Electronically Filed - CITY OF ST. LOUIS - December 04, 2023 - 10:30 AM

themselves from the courses assigned to you, and for others, the University is now compelled to craft student-focused solutions.[55]

You were informed last academic year that in-person instruction would be required for all faculty for academic year 2022-2023.  You were informed on August 28, 2022 that the University expects you to hold in-person classes, as consistent with both the University and our students' expectations of you.  You have refused to respond in writing with a proposal describing anything the University could do to accommodate you providing in-person instruction and advising.  Your insubordination and refusal to communicate effectively or meaningfully with your Dean, and your actions to essentially convert your assigned in-person classes to online instruction despite the University's communications to you is cause for termination.[56]

**Therefore, you are hereby informed that effective immediately, your employment with the University is terminated.**  Please return your University access including your hadge [sic], keys, documents, and any other University property to the Office of Human Resources no later than 5pm on September 14, 2022.  Please call the undersigned to make arrangements.  If you would prefer to send the University property by courier, please advise and we will send a prepaid box to your home.  As a courtesy, you will be paid your full salary until September 30, 2022.  You will soon receive information in a separate communication regarding COBRA.[57]

82.   Plaintiff would note that he never received the August 19, 2022, communication noted in McKinney's September 9, 2022, letter.

83.   Moreover, each of McKinney's foregoing, allegedly non-discriminatory reasons for terminating Plaintiff's employment were patently false and merely an effort to hide Harris-Stowe's true, unlawful reasons for terminating Plaintiff's employment— because of his physical and mental health impairments (i.e., Plaintiff's disabilities)

---

[55] Plaintiff's Exhibit 10, p. 2.

[56] *Id.*

[57] *Id.* (emphasis added).

Electronically Filed - CITY OF ST. LOUIS - December 04, 2023 - 10:30 AM

and in retaliation for Plaintiff engaging in activities protected under both the ADA and MHRA (as set forth in detail above).

84.     By way of examples, McKinney's references to:

    a.     Previous issues with student facing interactions was unsupported, as Plaintiff's previous teaching year was solely via approved remote instruction.

    b.     Alleged attendance issues at mandatory meetings and events was false.

    c.     An August 19, 2022, letter to Plaintiff regarding continuing to engage in the interactive process was false in that:

        i.     Plaintiff never received any letter from Harris-Stowe dated August 19, 2022.

        ii.     Rather, through Plaintiff's union representative, on both August 26, 2022, and September 2, 2022,[58] Plaintiff made requests that Harris-Stowe engage in the interactive process—both emails went unanswered.

85.     Further evidencing the lack of credibility in Harris-Stowe's allegedly non-discriminatory reasons for terminating Plaintiff's employment, after Plaintiff filed his Charge with the EEOC/MCHR, the university offered Plaintiff his prior job back—strongly suggesting that there were no issues with Plaintiff's work-related behavior or performance.[59]

---

[58] *See generally* Plaintiff's Exhibit 11.
[59] *See* Plaintiff's Exhibit 4.

Electronically Filed - CITY OF ST. LOUIS - December 04, 2023 - 10:30 AM

86.  Moreover, Harris-Stowe's claim that Plaintiff's request to continue teaching remotely somehow posed an undue hardship on the university was both empirically denied by Plaintiff's (and other university professors) having previously (and successfully, without incident) taught all courses online, as well as by virtue of the number of exclusively online courses the university continued to offer its students for the Fall 2022 semester.

87.  Namely, throughout the Spring and Summer months of 2022, Harris-Stowe had tentative course lists available on their public-facing website.

88.  As of August 11, 2022, Plaintiff was scheduled to teach two courses that were traditionally taught online (i.e., remotely).

89.  Indeed, by the start of the Fall 2022 semester, all of the courses Plaintiff had traditionally taught online had been converted into in-person courses.

90.  Likewise, as of August 11, 2022, the Harris-Stowe website listed two additional courses within Plaintiff's discipline which were also traditionally taught online.

91.  Rather than assign Plaintiff to teach these courses, Harris-Stowe, instead, assigned the courses to "staff" and "adjunct" faculty.

92.  On August 11, 2022, Plaintiff—again—emailed Dean Terry Daily Davis ("Dean Davis") requesting that Plaintiff be assigned to teach the aforementioned, online courses (which would have resulted in him having a full faculty courseload).

93.  However, Dean Davis failed to respond to Plaintiff's August 11, 2022, email requesting these online assignments.

Electronically Filed - CITY OF ST. LOUIS - December 04, 2023 - 10:30 AM

94.   Around the same time, Plaintiff submitted an additional request to be assigned to teach a traditionally online course.

95.   However, this request was also ignored.

96.   Finally, despite McKinney's September 9, 2022, letter stating that Plaintiff would be paid through the end of September, when he received his final paycheck, Harris-Stowe failed to properly pay Plaintiff.[60]

97.   As Plaintiff had never experienced any pay issues from the university before, he reasonably surmised that this failure was more than a mere oversight; rather, it much more likely constituted the continuation of Harris-Stowe's unlawful and retaliatory behavior against Plaintiff.

## PLAINTIFF'S COLLECTIVE BARGAINING AGREEMENT (i.e., PLAINTIFF'S "CBA")

### Plaintiff's CBA—Introduction

98.   HSSU National Education Association (i.e., the Association) is a labor organization recognized as the exclusive bargaining representative for Harris-Stowe's full-time faculty, excluding Deans, Assistant Deans, and other supervisory personnel who supervise full-time faculty.

99.   At all times relevant herein, the Collective Bargaining Agreement (i.e., Plaintiff's CBA) between the Association and the University, was in effect.[61]

---

[60] *See generally* Plaintiff's Exhibit 12.
[61] *See* Plaintiff's Exhibit 13. Plaintiff's CBA was effective between July 1, 2018 and through June 30, 2021, and continued in force by subsequent agreements between the Association and Harris Stowe through June 30, 2022 (*See* Plaintiff's Exhibit 14), and then further through June 30, 2023 (*See* Plaintiff's Exhibit 15).

Electronically Filed - CITY OF ST. LOUIS - December 04, 2023 - 10:30 AM

100.   More specifically, at all relevant times herein, Plaintiff's employment with Harris-Stowe was subject to Plaintiff's CBA—including with respect to discipline, termination, and the filing of union grievances.

**Harris-Stowe's Progressive Discipline Policy
and Grievance Procedure Under Plaintiff's CBA**

HARRIS-STOWE'S PROGRESSIVE DISCIPLINE POLICY

101.   Under Plaintiff's CBA:

a.   Harris-Stowe may only impose discipline against covered employees in accordance with the standards of due process.[62]

b.   Harris-Stowe must utilize progressive discipline against a covered faculty member, including but not limited to:

    i.   Verbal warnings;

    ii.   Written warnings;

    iii.   Suspensions without pay; and

    iv.   Termination of the faculty member's employment with the university.[63]

---

[62] *See* Plaintiff's Exhibit 13 Art. XIII., § 13.1.
[63] *See Id.* at § 13.2.

Electronically Filed - CITY OF ST. LOUIS - December 04, 2023 - 10:30 AM

### THE CBA'S GRIEVANCE PROCEDURE
### FOR COVERED FACULTY MEMBERS

102. Under Plaintiff's CBA, Harris-Stowe may only have imposed discipline against Plaintiff after investigating any allegations of misconduct and informing him (in writing) of the investigation's outcome and the discipline or action to be imposed.[64]

103. When Harris-Stowe recommends a covered faculty member's dismissal (i.e., termination of employment) during a contract year, the faculty member is permitted to appeal the decision through the CBA's grievance process.[65]

104. The CBA's grievance process culminates with an appeal to Harris-Stowe's Board.[66]

105. Before a final grievance action, covered faculty members may be relieved of their duties, but would, nonetheless, remain entitled to their full salary and benefits.[67]

### HARRIS-STOWE'S BOARD OF REGENTS
### (i.e., THE BOARD)'S POLICY 4180

106. At all times relevant to this action, Harris-Stowe maintained a Board policy—Board Policy 4180 (Harris-Stowe's "Board Policy 4180")—regarding covered faculty members' grievances.[68]

107. Under Board Policy 4180, when Harris-Stowe recommends a covered faculty member's dismissal, the faculty member is permitted to appeal the decision through the Board's grievance process, which culminates in an appeal to the Board itself.[69]

---

[64] *See* Plaintiff's Exhibit 13, Art. XIII., § 13.6.
[65] *See Id.* at § 13.7.
[66] See *Id.*
[67] *See Id.* at § 13.8.
[68] *See* Plaintiff's Exhibit 16.
[69] Plaintiff's Exhibit 14, "Step 7."

Electronically Filed - CITY OF ST. LOUIS - December 04, 2023 - 10:30 AM

### Harris-Stowe Disciplined and/or Terminated Plaintiff's
### Employment without Processing his CBA Grievance

108.  By letter dated September 9, 2022, Harris-Stowe informed Plaintiff that his employment as a full-time faculty member was terminated, immediately.[70]

109.  Per both Plaintiff's CBA and Board Policy 4180, Plaintiff, though an Association staff member, timely sought informal resolution of the recommendation prior to filing a formal grievance.

110.  However, Harris-Stowe refused to participate in an informal resolution meeting under either the CBA or Board Policy 4180.[71]

111.  On October 7, 2022, Plaintiff, though an Association staff member, timely filed a grievance under both Plaintiff's CBA and Board Policy 4180—appealing the university's dismissal recommendation.[72]

112.  Nonetheless, Harris-Stowe refused and continues to refuse to process Plaintiff's timely filed grievance under either Plaintiff's CBA or Board Policy 4180.

113.  As specifically plead below, Harris-Stowe's refusal to process Plaintiff's timely filed grievance under either Plaintiff's CBA or Board Policy 4180 constitutes a material breach of Plaintiff's CBA.

114.  Likewise, and also as specifically plead below, Harris-Stowe's refusal to process Plaintiff's timely filed grievance under either Plaintiff's CBA or Board Policy 4180 constitutes a material breach of Board Policy 4180.

---

[70] *See generally* Plaintiff's Exhibit 10.
[71] *See* Plaintiff's Exhibit 17.
[72] *See* Plaintiff's Exhibit 18.

Electronically Filed - CITY OF ST. LOUIS - December 04, 2023 - 10:30 AM

115.   Despite failing to follow the requirements as set forth in either Plaintiff's CBA or Board Policy 4180, Harris-Stowe, nonetheless, ceased paying Plaintiff's usual salary and benefits effective September 30, 2022—all causing harm to Plaintiff.

## PLAINTIFF'S LEGAL CLAIMS

### COUNT I:  DISABILITY DISCRIMINATION
*Brought Pursuant to the MHRA* (RSMo. §§ 213.010, *et seq.*)

116.   Plaintiff is "disabled" as that term is defined by the MHRA.

117.   As briefly mentioned above, while employed at Harris-Stowe, Plaintiff was and/or had been diagnosed with the following physical and mental impairments (collectively, Plaintiff's "disabilities" or "mental impairments"):

a.     Type II Diabetes (physical impairment).

b.     Hyperglycemia (physical impairment).

c.     Major depressive disorder (mental impairment).

d.     Panic disorder (mental impairment).

e.     Agoraphobia (mental impairment).

118.   Each of the foregoing physical and mental impairments are "disabilities," as that term is defined (and contemplated) by the MHRA because:

a.     They, individually and collectively, substantially limit one (1) or more of Plaintiff's major life activities;

b.     Plaintiff had a record of each of the above-listed physical and mental impairments; and/or

Electronically Filed - CITY OF ST. LOUIS - December 04, 2023 - 10:30 AM

    c.    Harris-Stowe regarded Plaintiff as having one or more of the above-listed physical and/or mental impairments.

119. Thus, Plaintiff is a member of a class of persons protected by the MHRA—a disabled employee.

120. Knowing that Plaintiff was suffering the above-detailed physical and mental health impairments (i.e., Plaintiff's disabilities), Harris-Stowe had an obligation to engage Plaintiff in a good-faith interactive process to determine what, if any, reasonable accommodations may be needed/feasible to ensure that Plaintiff could perform the essential functions of his job with Harris-Stowe.

121. Importantly, Plaintiff is under information and belief that the ability to teach in-person courses was added by Harris-Stowe to the "essential functions" of Plaintiff's job in a discriminatory manner with the intention of permitting Harris-Stowe to claim that Plaintiff could not perform said functions.

122. However, as detailed above, Harris-Stowe (*vis-à-vis* its supervisory agents) failed to engage Plaintiff in a good-faith interactive process prior to terminating Plaintiff's employment.

123. By way of examples, Harris-Stowe terminated the interactive process prior to its completion and refused to so much as process Plaintiff's CBA grievance.

124. Despite suffering from the above-described disabilities, throughout the entirety of Plaintiff's employment at Harris-Stowe (following Plaintiff's diagnosis of said physical and mental conditions), Plaintiff was able to perform the essential functions of his job—with Harris-Stowe's approval.

Electronically Filed - CITY OF ST. LOUIS - December 04, 2023 - 10:30 AM

125.    Thus, Plaintiff could perform the essential functions of his job with or without reasonable accommodations.

126.    Nonetheless, Harris-Stowe (*vis-à-vis* its supervisory agents, including but not limited to, those named herein) terminated Plaintiff's employment with the University.

127.    As specifically enumerated herein, Harris-Stowe's (*vis-à-vis* its supervisory agents, including but not limited to, those named herein) allegedly non-discriminatory basis for terminating Plaintiff's employment with the university lacks credibility.

128.    Rather, based on the substantial, credible evidence (including circumstantial) alleged herein, Plaintiff is under information and belief that his perceived and/or actual physical and/or mental health disabilities were at least a motivating factor in Harris-Stowe's (*vis-à-vis* its supervisory agents, including but not limited to, those named herein) true basis for terminating Plaintiff's employment with the university.

129.    As a direct and proximate result of the foregoing, Plaintiff suffered intentional discrimination because of his actual and/or perceived physical impairment (i.e., Plaintiff's physical and/or mental health disabilities)—in violation of the MHRA—at the hands of Harris-Stowe (*vis-à-vis* its supervisory agents, including but not limited to, those named herein) during the course of Plaintiff's employment with the same.

130.    As a direct and proximate result of Harris-Stowe's (*vis-à-vis* its supervisory agents, including but not limited to, those named herein) actions and/or omissions as

Electronically Filed - CITY OF ST. LOUIS - December 04, 2023 - 10:30 AM

specifically alleged herein, Plaintiff has been, and continues to be, deprived of income, as well as other monetary and non-monetary benefits.

131. Moreover, and also as a direct and proximate result of Harris-Stowe's (*vis-à-vis* its supervisory agents, including but not limited to, those named herein) actions and/or omissions as specifically alleged herein, Plaintiff has suffered, and continues to suffer, emotional distress (e.g., "garden-variety" emotional distress) and other related compensatory damages.

132. By failing to take prompt remedial action against Plaintiff's supervisory agents for their unlawful behavior as specifically alleged herein, Harris-Stowe (including its Board), in effect, condoned, ratified, and/or authorized the unlawful conduct as described herein. Including, without limitation, by:

    a.    Failing to make good-faith efforts to establish and enforce policies to prevent illegal discrimination against its employees, including as alleged herein.

    b.    Failing to properly train and/or otherwise inform its supervisors and employees concerning their duties and obligations under the civil rights laws, including under state and federal anti-discrimination laws (e.g., the MHRA, ADA, etc.).

133. As shown by the foregoing, Harris-Stowe's (*vis-à-vis* its supervisory agents, including but not limited to, those named herein) conduct was willful, wanton, malicious, and/or showed a complete indifference to or a conscious disregard for the rights of others (including Plaintiff's)—thus justifying an award of punitive

Electronically Filed - CITY OF ST. LOUIS - December 04, 2023 - 10:30 AM

damages in an amount sufficient to punish Harris-Stowe and/or deter it and others like it from similar conduct in the future.

134. If deemed by this Court to be the "prevailing party" on this claim, Plaintiff is entitled to recover his reasonable attorneys' fees and costs from Harris-Stowe, as provided for in the MHRA.

WHEREFORE, Plaintiff prays that this Court award him nominal, compensatory, and/or punitive damages in an amount to be determined at trial; compensation for emotional distress (e.g., "garden-variety" emotional distress) and other related compensatory damages in an amount to be determined at trial; interest and costs, as permitted by law; Plaintiff's reasonable attorneys' fees and costs, as permitted by law; and for any and all other relief this Court deems just and proper under the circumstances; all in excess of this Court's minimum jurisdictional requirement of $25,000.

### COUNT II:  FAILURE TO ACCOMMODATE
*Brought Pursuant to the ADA (42 U.S.C. §§ 12101, et seq.)*

135. Plaintiff is "disabled" as that term is defined by the ADA.

136. While employed at Harris-Stowe, Plaintiff was and/or had been diagnosed with the following physical and mental impairments (collectively, Plaintiff's "disabilities" or "mental impairments"):

  a.    Type II Diabetes (physical impairment).

  b.    Hyperglycemia (physical impairment).

  c.    Major depressive disorder (mental impairment).

  d.    Panic disorder (mental impairment).

Electronically Filed - CITY OF ST. LOUIS - December 04, 2023 - 10:30 AM

     e.     Agoraphobia (mental impairment).

137.    Each of the foregoing physical and mental impairments are "disabilities," as that term is defined (and contemplated) by the ADA because:

     a.     They, individually and collectively, substantially limit one (1) or more of Plaintiff's major life activities;

     b.     Plaintiff had a record of each of the above-listed physical and mental impairments; and/or

     c.     Harris-Stowe regarded Plaintiff as having one or more of the above-listed physical and/or mental impairments.

138.    Thus, Plaintiff is a member of a class of persons protected by the ADA—a disabled employee.

139.    For the reasons specifically enumerated herein, Plaintiff is a qualified individual as required by the ADA.

140.    More specifically, and without limitation, Plaintiff is a qualified individual under the ADA because Plaintiff:

     a.     Possesses the skill, education, experience, and training required for the position as one of Harris-Stowe's professors.

     c.     Can (and did) perform the essential functions of his job as one of Harris-Stowe's professors, with or without reasonable accommodations.

141.    Knowing that Plaintiff was suffering the above-detailed physical and mental health impairments (i.e., Plaintiff's disabilities), Harris-Stowe had an obligation to engage Plaintiff in a good-faith interactive process to determine what, if any, reasonable

Electronically Filed - CITY OF ST. LOUIS - December 04, 2023 - 10:30 AM

accommodations may be needed/feasible to ensure that Plaintiff could perform the essential functions of his job with Harris-Stowe.

142. However, Harris-Stowe (*vis-à-vis* its supervisory agents, including but not limited to, those named herein) failed to engage Plaintiff in any good-faith interactive process prior to terminating Plaintiff's employment.

143. Instead, Harris-Stowe (*vis-à-vis* its supervisory agents, including but not limited to, those named herein) engaged in a systematic and intentional scheme designed to "manage Plaintiff out" of his position with the university.

144. But for Harris-Stowe's (*vis-à-vis* its supervisory agents, including but not limited to, those named herein) lack of good faith in engaging Plaintiff in the interactive process, Plaintiff's actual and/or perceived physical impairment(s) could have been reasonably accommodated.

145. As a direct and proximate result of Plaintiff's actual and/or perceived physical impairment(s), he suffered one or more adverse employment actions at the hands of Harris-Stowe (*vis-à-vis* its supervisory agents, including but not limited to, those named herein), including, but not limited to:

   a.   Terminating Plaintiff's employment.

   b.   "Papering" Plaintiff's file in an active and intentional effort to "manage Plaintiff" out of his position with the university.[73]

---

[73] *See Kim v. Nash Finch, Co.,* 123 F.3d 1046, 1060 (8th Cir. 1997) (internal citations omitted).

Electronically Filed - CITY OF ST. LOUIS - December 04, 2023 - 10:30 AM

c.      Repeatedly refusing to properly assist Plaintiff in performing the essential functions of his duties; taking steps to prevent Plaintiff from being able to properly complete tasks assigned to him; criticizing Plaintiff for situations that none of Plaintiff's co-workers were similarly criticized; falsely alleging that Plaintiff had engaged in workplace misconduct and/or had performance issues; and/or engaging in open and obvious behavior designed to intimidate Plaintiff—such that Harris-Stowe's aforementioned behavior constitutes a "tangible change in duties or working conditions that constitute a material disadvantage" to Plaintiff.[74]

146.   Plaintiff's perceived and/or actual physical and/or mental impairments were at least a motivating factor in one or more of the aforementioned adverse employment actions Plaintiff was subjected to by Harris-Stowe (*vis-à-vis* its supervisory agents, including but not limited to, those named herein).

147.   As specifically enumerated herein, Harris-Stowe's (*vis-à-vis* its supervisory agents, including but not limited to, those named herein) allegedly non-discriminatory basis for taking one or more of the aforementioned adverse employment actions against Plaintiff—lack credibility.

148.   Rather, based on the substantial, credible evidence (including circumstantial) alleged herein, Plaintiff is under information and belief that his perceived and/or actual physical and/or mental health disabilities were at least a motivating factor in

---

[74] *See Cossette v. Minnesota Power & Light,* 188 F.3d 964, 972 (8th Cir. 1999) (internal quotations and citations omitted).

Electronically Filed - CITY OF ST. LOUIS - December 04, 2023 - 10:30 AM

Harris-Stowe's (*vis-à-vis* its supervisory agents, including but not limited to, those named herein) true basis for terminating Plaintiff's employment with the university.

149.   As a direct and proximate result of the foregoing, Plaintiff suffered intentional discrimination because of his actual and/or perceived physical impairment (i.e., Plaintiff's physical and/or mental health disabilities)—in violation of the ADA—at the hands of Harris-Stowe (*vis-à-vis* its supervisory agents, including but not limited to, those named herein) during the course of Plaintiff's employment with the same.

150.   As a direct and proximate result of Harris-Stowe's (*vis-à-vis* its supervisory agents, including but not limited to, those named herein) actions and/or omissions as specifically alleged herein, Plaintiff has been, and continues to be, deprived of income, as well as other monetary and non-monetary benefits.

151.   Moreover, and also as a direct and proximate result of Harris-Stowe's (*vis-à-vis* its supervisory agents, including but not limited to, those named herein) actions and/or omissions as specifically alleged herein, Plaintiff has suffered, and continues to suffer, emotional distress (e.g., "garden-variety" emotional distress) and other related compensatory damages.

152.   By failing to take prompt remedial action against Plaintiff's supervisory agents for their unlawful behavior as specifically alleged herein, Harris-Stowe (including its Board), in effect, condoned, ratified, and/or authorized the unlawful conduct as described herein. Including, without limitation, by:

d.   Failing to make good-faith efforts to establish and enforce policies to prevent illegal discrimination against its employees, including as alleged herein.

Electronically Filed - CITY OF ST. LOUIS - December 04, 2023 - 10:30 AM

    e.    Failing to properly train and/or otherwise inform its supervisors and employees concerning their duties and obligations under the civil rights laws, including under state and federal anti-discrimination laws (e.g., the MHRA, ADA, etc.).

153. As shown by the foregoing, Harris-Stowe's (*vis-à-vis* its supervisory agents, including but not limited to, those named herein) conduct was willful, wanton, malicious, and/or showed a complete indifference to or a conscious disregard for the rights of others (including Plaintiff's)—thus justifying an award of punitive damages in an amount sufficient to punish Harris-Stowe and/or deter it and others like it from similar conduct in the future.

154. If deemed by this Court to be the "prevailing party" on this claim, Plaintiff is entitled to recover his reasonable attorneys' fees and costs from Harris-Stowe, as provided for in the ADA.

    WHEREFORE, Plaintiff prays that this Court award him nominal, compensatory, and/or punitive damages in an amount to be determined at trial; compensation for emotional distress (e.g., "garden-variety" emotional distress) and other related compensatory damages in an amount to be determined at trial; interest and costs, as permitted by law; Plaintiff's reasonable attorneys' fees and costs, as permitted by law; and for any and all other relief this Court deems just and proper under the circumstances; all in excess of this Court's minimum jurisdictional requirement of $25,000.

Electronically Filed - CITY OF ST. LOUIS - December 04, 2023 - 10:30 AM

## COUNT III:  HOSTILE WORK-ENVIRONMENT
### *Brought Pursuant to the MHRA* (RSMo. §§ 213.010, *et seq.*)

155.  Plaintiff is "disabled" as that term is defined by the MHRA.

156.  During Plaintiff's employment with Harris-Stowe, Plaintiff was subjected to severe and unwelcome discrimination based on his disability, including, but not limited to, that contained within this Petition.

157.  The disability -offensive, -harassing, and -discriminatory conduct was sufficiently severe and/or pervasive that a reasonable person in Plaintiff's position would find Plaintiff's work environment to be hostile and/or abusive.

158.  Moreover, for the reasons specifically enumerated herein, Harris-Stowe's (*vis-à-vis* its supervisory agents, including but not limited to, those named herein) conduct had the purpose or effect of unreasonably interfering with Plaintiff's work-performance.[75]

159.  At the time the disability -offensive, -harassing, and -discriminatory conduct occurred, and as a result of that conduct, Plaintiff believed his work environment to be hostile and/or abusive, and said conduct adversely affected the terms, conditions, and/or privileges of Plaintiff's employment with Harris-Stowe.

160.  For the reasons set forth herein, Harris-Stowe knew or should have known of the disability discrimination Plaintiff faced at the hands of Harris-Stowe's supervisory agents.

---

[75] *See Alhalabi v. Mo. Dep't. of Nat. Res.*, 300 S.W.3d 518, 526 (Mo.App. E.D. 2009).

Electronically Filed - CITY OF ST. LOUIS - December 04, 2023 - 10:30 AM

161.  By failing to take prompt remedial action against Plaintiff's supervisory agents for their unlawful behavior as specifically alleged herein, Harris-Stowe (including its Board), in effect, condoned, ratified, and/or authorized the unlawful conduct as described herein. Including, without limitation, by:

    a.  Failing to make good-faith efforts to establish and enforce policies to prevent illegal discrimination against its employees, including as alleged herein.

    b.  Failing to properly train and/or otherwise inform its supervisors and employees concerning their duties and obligations under the civil rights laws, including under state and federal anti-discrimination laws (e.g., the MHRA, ADA, and/or ADEA).

162.  Plaintiff's disability was, at the very least, a motivating factor in Harris-Stowe's disparate treatment of Plaintiff.

163.  As a direct and proximate result of the foregoing, Plaintiff suffered intentional discrimination because of his actual and/or perceived physical impairment (i.e., Plaintiff's mental health impairments)—in violation of the MHRA—at the hands of Harris-Stowe (*vis-à-vis* its supervisory agents, including but not limited to, those named herein) during the course of Plaintiff's employment with the same.

164.  As a direct and proximate result of Harris-Stowe's (*vis-à-vis* its supervisory agents, including but not limited to, those named herein) actions and/or omissions as specifically alleged herein, Plaintiff has been, and continues to be, deprived of income, as well as other monetary and non-monetary benefits.

Electronically Filed - CITY OF ST. LOUIS - December 04, 2023 - 10:30 AM

165. Moreover, and also as a direct and proximate result of Harris-Stowe's (*vis-à-vis* its supervisory agents, including but not limited to, those named herein) actions and/or omissions as specifically alleged herein, Plaintiff has suffered, and continues to suffer, emotional distress (e.g., "garden-variety" emotional distress) and other related compensatory damages.

166. By failing to take prompt remedial action against Plaintiff's supervisory agents for their unlawful behavior as specifically alleged herein, Harris-Stowe (including its Board), in effect, condoned, ratified, and/or authorized the unlawful conduct as described herein. Including, without limitation, by:

   a.  Failing to make good-faith efforts to establish and enforce policies to prevent illegal discrimination against its employees, including as alleged herein.

   b.  Failing to properly train and/or otherwise inform its supervisors and employees concerning their duties and obligations under the civil rights laws, including under state and federal anti-discrimination laws (e.g., the MHRA, ADA, and/or ADEA).

167. As shown by the foregoing, Harris-Stowe's (*vis-à-vis* its supervisory agents, including but not limited to, those named herein) conduct was willful, wanton, malicious, and/or showed a complete indifference to or a conscious disregard for the rights of others (including Plaintiff's)—thus justifying an award of punitive damages in an amount sufficient to punish Harris-Stowe and/or deter it and others like it from similar conduct in the future.

Electronically Filed - CITY OF ST. LOUIS - December 04, 2023 - 10:30 AM

168.   If deemed by this Court to be the "prevailing party" on this claim, Plaintiff is entitled to recover his reasonable attorneys' fees and costs from Harris-Stowe, as provided for in the MHRA.

WHEREFORE, Plaintiff prays that this Court award him nominal, compensatory, and/or punitive damages in an amount to be determined at trial; compensation for emotional distress (e.g., "garden-variety" emotional distress) and other related compensatory damages in an amount to be determined at trial; interest and costs, as permitted by law; Plaintiff's reasonable attorneys' fees and costs, as permitted by law; and for any and all other relief this Court deems just and proper under the circumstances all in excess of this Court's minimum jurisdictional requirement of $25,000.

**COUNT IV:  RETALIATION**
*Brought Pursuant to the ADA (42 U.S.C. §§ 12101, et seq.)*

169.   As set forth herein, Plaintiff engaged in one or more activities as protected by the ADA.

170.   More specifically, and without limitation, Plaintiff engaged in the protected activities of:

a.   Seeking one or more reasonable accommodations for his physical and/or mental health impairments (i.e., his "disabilities").

b.   Obtaining one or more reasonable accommodations for his physical and/or mental health impairments (i.e., his "disabilities").

c.   Complaining, in good faith, to one or more of Harris-Stowe's supervisory agents about discrimination, harassment, and/or retaliation.

Electronically Filed - CITY OF ST. LOUIS - December 04, 2023 - 10:30 AM

d.    Complaining, in good faith, to Harris-Stowe about discrimination, harassment, and/or retaliation.

171.  As set forth herein, Harris-Stowe took one or more adverse employment actions against Plaintiff, including, without limitation, by terminating his employment.

172.  There existed a causal connection between one or more of the adverse employment actions Harris-Stowe took against Plaintiff and one or more of Plaintiff's protected activities.

173.  As alleged in more detail above, Harris-Stowe treated Plaintiff differently than other similarly-situated employees.

174.  Moreover, and also as alleged in more detail above, Harris-Stowe's allegedly non-discriminatory reasons for terminating Plaintiff's employment lack credibility or rationality.

175.  Rather, based on the substantial, credible evidence (including circumstantial) alleged herein, Plaintiff is under information and belief that his perceived and/or actual physical and/or mental health disabilities were at least a motivating factor in Harris-Stowe's (*vis-à-vis* its supervisory agents, including but not limited to, those named herein) true basis for terminating Plaintiff's employment with the university.

176.  As a direct and proximate result of the foregoing, Plaintiff suffered intentional discrimination because of his actual and/or perceived physical impairment (i.e., Plaintiff's physical and/or mental health disabilities)—in violation of the ADA—at the hands of Harris-Stowe (*vis-à-vis* its supervisory agents, including but not limited to, those named herein) during the course of Plaintiff's employment with the same.

Electronically Filed - CITY OF ST. LOUIS - December 04, 2023 - 10:30 AM

177.   As a direct and proximate result of Harris-Stowe's (*vis-à-vis* its supervisory agents, including but not limited to, those named herein) actions and/or omissions as specifically alleged herein, Plaintiff has been, and continues to be, deprived of income, as well as other monetary and non-monetary benefits.

178.   Moreover, and also as a direct and proximate result of Harris-Stowe's (*vis-à-vis* its supervisory agents, including but not limited to, those named herein) actions and/or omissions as specifically alleged herein, Plaintiff has suffered, and continues to suffer, emotional distress (e.g., "garden-variety" emotional distress) and other related compensatory damages.

179.   By failing to take prompt remedial action against Plaintiff's supervisory agents for their unlawful behavior as specifically alleged herein, Harris-Stowe (including its Board), in effect, condoned, ratified, and/or authorized the unlawful conduct as described herein. Including, without limitation, by:

    f.    Failing to make good-faith efforts to establish and enforce policies to prevent illegal discrimination against its employees, including as alleged herein.

    g.    Failing to properly train and/or otherwise inform its supervisors and employees concerning their duties and obligations under the civil rights laws, including under state and federal anti-discrimination laws (e.g., the MHRA, ADA, etc.).

180.   As shown by the foregoing, Harris-Stowe's (*vis-à-vis* its supervisory agents, including but not limited to, those named herein) conduct was willful, wanton, malicious, and/or showed a complete indifference to or a conscious disregard for

Electronically Filed - CITY OF ST. LOUIS - December 04, 2023 - 10:30 AM

the rights of others (including Plaintiff's)—thus justifying an award of punitive damages in an amount sufficient to punish Harris-Stowe and/or deter it and others like it from similar conduct in the future.

181.   If deemed by this Court to be the "prevailing party" on this claim, Plaintiff is entitled to recover his reasonable attorneys' fees and costs from Harris-Stowe, as provided for in the ADA.

WHEREFORE, Plaintiff prays that this Court award him nominal, compensatory, and/or punitive damages in an amount to be determined at trial; compensation for emotional distress (e.g., "garden-variety" emotional distress) and other related compensatory damages in an amount to be determined at trial; interest and costs, as permitted by law; Plaintiff's reasonable attorneys' fees and costs, as permitted by law; and for any and all other relief this Court deems just and proper under the circumstances; all in excess of this Court's minimum jurisdictional requirement of $25,000.

## COUNT V:  BREACH OF CONTRACT
### *In Violation of Plaintiff's Collective Bargaining Agreement*

182.   Harris-Stowe breached its obligations to Plaintiff under his CBA by:

a.   Failing to discipline Plaintiff strictly in accordance with the due process protections provided for therein (*see* above);

b.   Terminating Plaintiff's employment at the university without cause;

c.   Failing to process Plaintiff's timely filed grievance appealing Harris-Stowe's dismissal recommendation; and/or

Electronically Filed - CITY OF ST. LOUIS - December 04, 2023 - 10:30 AM

    d.      Failing to compensate Plaintiff pending the final appeal of his grievance to the Board.

183. Plaintiff performed each of his obligations to Harris-Stowe under Plaintiff's CBA.

184. Harris-Stowe's breach of contract as alleged in this Count has caused and will continue to cause Plaintiff to suffer monetary damages—amounts that are not yet ascertainable, but in excess of this Court's minimum jurisdictional requirement of $25,000.

WHEREFORE, Plaintiff prays that this Court enter an Order:

    a.      Declaring that Harris-Stowe breached its obligations to Plaintiff under his CBA by terminating Plaintiff's employment without cause, imposing discipline against Plaintiff without due process, and failing to process Plaintiff's timely filed grievance;

    b.      Declaring that Harris-Stowe breached its obligations to Plaintiff under his CBA by failing to compensate Plaintiff during the pendency of his filed grievance;

    c.      Ordering Harris-Stowe to make Plaintiff whole for the wages and benefits he lost due to Harris-Stowe's breach of contract as alleged in this Count in an amount equal to at least this Court's jurisdictional minimum of $25,000;

    d.      Ordering Plaintiff to be reinstated to his full-time faculty position;

    e.      Awarding Plaintiff costs and prejudgment interest, as permitted by law;

    f.      Awarding Plaintiff his reasonable attorneys' fees, as permitted by law; and/or

Electronically Filed - CITY OF ST. LOUIS - December 04, 2023 - 10:30 AM

g.      Awarding Plaintiff such other relief as the Court may deem just and proper under the circumstances.

**COUNT VII:   BREACH OF CONTRACT**
*In Violation of Harris-Stowe's Unequivocal Policy 4180*

185.   For, without limitation, the specific reasons enumerated above, Harris-Stowe breached its obligations to Plaintiff under Harris-Stowe's unequivocal policy 4180.

186.   Harris-Stowe's breach of contract as alleged in this Count has caused and will continue to cause Plaintiff to suffer monetary damages—amounts that are not yet ascertainable, but in excess of this Court's minimum jurisdictional requirement of $25,000.

187.   Plaintiff performed each of his obligations to Harris-Stowe as specifically enumerated by the university's applicable policies and procedures.

WHEREFORE, Plaintiff prays that this Court enter an Order:

a.      Declaring that Harris-Stowe breached its obligations to Plaintiff under Harris-Stowe's Policy 4180;

b.      Ordering Harris-Stowe to make Plaintiff whole for the wages and benefits he lost due to Harris-Stowe's breach of contract as alleged in this Count in an amount equal to at least this Court's jurisdictional minimum of $25,000;

c.      Ordering Plaintiff to be reinstated to his full-time faculty position;

d.      Awarding Plaintiff costs and prejudgment interest, as permitted by law;

e.      Awarding Plaintiff his reasonable attorneys' fees, as permitted by law; and/or

Electronically Filed - CITY OF ST. LOUIS - December 04, 2023 - 10:30 AM

f.      Awarding Plaintiff such other relief as the Court may deem just and proper

under the circumstances.

**COUNT VIII:  PETITION FOR REVIEW OF
UNCONTESTED ADMINISTRATIVE DECISION**
*Brought Pursuant to RSMo. § 536.150*

188.    Harris-Stowe issued its dismissal notice to Plaintiff without providing notice and an

opportunity for hearing and is therefore a non-contested case subject to *de novo*

judicial review under RSMo. § 536.150.

189.    Harris-Stowe failed to process Plaintiff's dismissal grievance under his CBA and

has denied Plaintiff's right to a hearing as mandated by the same.

190.    Plaintiff was under contract with Harris-Stowe at the time his employment with the

university was terminated, and thus, Plaintiff was entitled to due process of law

before being deprived of his property interest in his job.[76]

191.    Harris-Stowe unlawfully deprived Plaintiff of his property interest in his

employment without required due process in violation of his contractual, statutory,

and constitutional right to due process and doing so acted in an unreasonable,

arbitrary, and capricious manner; and abused its discretion.

192.    Harris-Stowe's actions as alleged in this Count has caused and will continue to cause

Plaintiff to suffer monetary damages—amounts that are not yet ascertainable, but in

excess of this Court's minimum jurisdictional requirement of $25,000.

WHEREFORE, Plaintiff prays that this Court enter an Order:

---

[76] Mo. Const., Art. I, Sec. 10.

Electronically Filed - CITY OF ST. LOUIS - December 04, 2023 - 10:30 AM

a.   Declaring that Harris-Stowe's failure to process Plaintiff's dismissal grievance was unconstitutional, unlawful, unreasonable, arbitrary, capricious, and an abuse of discretion;

b.   Ordering that Harris-Stowe reinstate Plaintiff to his full-time faculty position with the university;

c.   Ordering Harris-Stowe to make Plaintiff whole for lost wages and benefits because of Harris-Stowe's breach of Plaintiff's employment contract;

d.   Awarding Plaintiff his reasonable attorneys' fees, costs, and prejudgment interest, as permitted by law; and

e.   Awarding Plaintiff such other relief as the Court deems just and proper under the circumstances.

Respectfully submitted,

/s/ Jeremy D. Hollingshead
Jeremy D. Hollingshead, #60447
Hollingshead & Dudley
14323 S. Outer 40 Rd., Ste. 204N
Town & Country, MO 63017
Telephone:   (314) 925-7627
Facsimile:    (314) 667-4798
Email:  jhollingshead@hdtriallawyers.com

CO-COUNSEL FOR PLAINTIFF

/s/ Daniel J. Bryar
Daniel J. Bryar, #71815
Missouri National Education Association
General Counsel
955 Gardenview Office Parkway
St. Louis, Missouri 63141
Telephone:   (573) 508-8531
Email:  daniel.bryar@mnea.org

CO-COUNSEL FOR PLAINTIFF

Electronically Filed - CITY OF ST. LOUIS - December 04, 2023 - 10:30 AM

State of Missouri      )
                     ) ss.
County of St. Louis    )

      Kenneth Noe, being first duly sworn on his oath states he is the named Plaintiff in the above-captioned cause of action, that he has read the foregoing Verified Petition, and the facts set forth therein are true and correct to the best of his knowledge, information, and belief.

_____

Kenneth Noe, Plaintiff

      Subscribed and sworn on this __1st___ day of _December__, 2023.

_____

Notary Public

My Commission expires: ___3-20-27_____

```
JEREMIAH D HOLLINGSHEAD
Notary Public - Notary Seal
St. Louis City - State of Missouri
Commission Number 13885671
My Commission Expires Mar 20, 2027
```